15-3856-cv
*Liana Carrier Ltd. et al. v. Pure Biofuels Corporation et al.*



UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of December, two thousand sixteen.

Present:
        AMALYA L. KEARSE,
        RICHARD C. WESLEY,
        DEBRA ANN LIVINGSTON,
            *Circuit Judges*.
_____

LIANA CARRIER LTD., AMIR RIMON,

        *Plaintiffs-Appellants*,

      v.                                                                                            15-3856

PURE BIOFUELS CORPORATION, PURE BIOFUELS DEL PERU, S.A.C., PURE BIOFUELS HOLDINGS, L.P., CARLOS ALBERTO PINTO ROCHA,

        *Defendants-Appellees*,

LUIS HUMBERTO GOYZUETA ANGOBALDO, GUSTAVO GOYZUETA, BRIAN S. ALPERSTEIN,

        *Defendants*.<sup>*</sup>
_____

---

<sup>*</sup> The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

1

MANDATE ISSUED ON 12/28/2016

| | |
|---|---|
| For Plaintiffs-Appellants: | CHRISTOPHER B. SPUCHES, Ehrenstein Charbonneau Calderin, Miami, Florida |
| For Defendants-Appellees: | RONALD D. LEFTON (Richard A. Edlin, *on the brief*), Greenberg Traurig, LLP, New York, New York |

Appeal from a judgment of the United States District Court for the Southern District of New York (Marrero, *J*.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **MODIFIED** and, as so modified, is **AFFIRMED**.

Plaintiffs-Appellants Liana Carrier Ltd. ("Liana Ltd.") and Amir Rimon appeal from a judgment of the United States District Court for the Southern District of New York (Marrero, *J*.) granting the motion to dismiss by Defendants-Appellees Pure Biofuels Corporation ("Pure Biofuels"), Pure Biofuels del Peru, S.A.C., Pure Biofuels Holdings, L.P., and Carlos Alberto Pinto Rocha ("Pinto") and declining to exercise supplemental jurisdiction over Plaintiffs-Appellants' state law claims. Liana Ltd. and Rimon argue that the district court erred (1) in denying them leave to amend their complaint on grounds of futility; (2) in holding that their state law contract claim did not "aris[e] under" the laws of the United States for purposes of 28 U.S.C. § 1331; (3) by utilizing a letter-briefing procedure in evaluating the merits of the proposed amendments to the complaint; and (4) in dismissing all of their claims, including their state law claims, with prejudice. We assume the parties' familiarity with the facts, procedural history of the case, and the issues on appeal.

**A. Background**

On August 14, 2008, Liana Ltd. and Rimon entered into two private placement subscription agreements for a total 15,714,287 shares of defendant Pure Biofuels at $0.35 a

share, a cumulative investment of $5,500,000. Pure Biofuels, now dissolved, was, at the time, the parent company of defendant Pure Biofuels del Peru, S.A.C., and aimed to develop a biodiesel production facility in Lima, Peru serving the Peruvian market. Liana Ltd. and Rimon allege that they were led to believe that the prospects for Pure Biofuels were bright, that Pure Biofuels' Securities and Exchange Commission ("SEC") disclosures suggested that the necessary biodiesel production facility could be constructed inexpensively, and that Pinto represented to them that Pure Biofuels would soon have steadily rising sales and income.

By the end of 2008, however, Pure Biofuels was already in desperate need of a capital infusion. Plaintiffs allege that Pinto, who, at the time, was Pure Biofuels' Chief Operating Officer, arranged matters so that the only financing options presented to Pure Biofuels' board of directors were those which would ultimately permit him to obtain a controlling stake in the company and to take it private. Included among the proposals Pinto encouraged Pure Biofuels' board to enter into was one from FDS, an entity Plaintiffs-Appellants allege Pinto secretly controlled. At Pinto's urging, Pure Biofuels allegedly entered into several transactions with FDS from late 2008 through 2010 in which Pure Biofuels issued millions of equity warrants to FDS in exchange for financing (together with the transactions described in the remainder of this paragraph, the "Financing Transactions"). Pinto also helped Pure Biofuels secure a line of credit from Trimarine, another entity in which Pinto allegedly maintained an interest, in exchange for which Pure Biofuels issued warrants to Trimarine. To protect its own interest in Pure Biofuels, Plainfield Peru I LLC ("Plainfield"), Pure Biofuels' largest shareholder, demanded that Pure Biofuels issue warrants in its favor before it would accede to these arrangements. By the end of 2010, Plainfield, FDS and Trimarine controlled more than ninety

percent of Pure Biofuels' shares, as computed on a fully diluted basis. In January 2011, Pure Biofuels deregistered its securities with the SEC.

In May 2012, Pure Biofuels gave notice that its parent, PBC Acquisition LLC ("PBC Acquisition"), a Nevada limited liability company, had merged with and into it under Nevada's short-form merger statute (the "Short-Form Merger"). Nevada's short-form merger statute permits a parent corporation owning at least ninety percent of the outstanding shares of each class of a subsidiary corporation to effect a merger of the parent with and into the subsidiary without the approval of the minority shareholders. Nev. Rev. Stat. § 92A.180(2). Liana Ltd. and Rimon allege that PBC Acquisition was a vehicle jointly controlled by FDS and Plainfield, used to hold their shares in Pure Biofuels and thereby effect the Short-Form Merger. The remaining shareholders in Pure Biofuels, including Plaintiffs-Appellants, received $0.00832 per share in the exchange.[1]

### B. Procedural History

On May 12, 2014, Plaintiffs-Appellants filed this action in the District Court for the Southern District of New York alleging violations of § 10(b) and Rule 10b-5 as well as a variety of state law claims. The district court dismissed those securities law claims that turned on the initial sale of securities on the grounds that these claims were time barred under the five year statute of repose imposed by 28 U.S.C. § 1658(b). The district court also rejected the contention that the alleged misrepresentations in Pure Biofuels' disclosures with respect to the Financing Transactions, which would bring Plaintiffs-Appellants' cause of action within five years of their filing suit, grounded a separate cause of action under the securities laws. It reasoned that, though these claims would not be barred by § 1658(b)'s term of repose,

---

[1] Plaintiffs' original $5,500,000 investment was therefore transformed into a right to receive $130,742.87.

Plaintiffs-Appellants had not sufficiently elaborated how the various transactions in which they had no involvement – whether induced by fraudulent misrepresentations or not – had caused the securities transaction at issue, the Short-Form Merger.

The district court also held that Plaintiffs-Appellants' contract claim – which alleged that defendants had breached their contractual representation that they were in compliance with federal securities law (the "10b-5 Representation") – did not arise under the securities laws such that federal question jurisdiction would attach and declined to exercise supplemental jurisdiction. It therefore dismissed all Plaintiffs-Appellants' claims. However, the district court did allow Plaintiffs-Appellants to submit letter briefing describing how they would amend their complaint to address the complaint's deficiencies, after which it would consider whether leave to amend would be appropriate.

Plaintiffs-Appellants' letter briefing argued that they could amend their complaint to make clear that the non-disclosure of the conflict of interest inherent in the Financing Transactions – that the entities providing the financing were largely tied to Pinto – had allowed Pinto and Plainfield to obtain sufficient control over Pure Biofuels to effect the Short-Form Merger, and that this connection grounded their securities law claim. The district court denied leave to amend as futile, and this appeal followed.

### C. Discussion

#### 1. Leave to Amend – Securities Claims

"We review a district court's denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which case we review the legal conclusion *de novo*. Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules

5

of Civil Procedure. In assessing whether the proposed complaint states a claim, we consider the proposed amendments along with the remainder of the complaint, accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (internal alterations omitted).

"To succeed on a § 10(b) and Rule 10b–5 claim, a plaintiff must prove '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *GAMCO Inv'rs, Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014)).

We have termed the third and fourth elements of a § 10(b) claim "transaction causation," which requires "an allegation that *but for* the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005) (emphasis added). We have also held that a plaintiff can allege transaction causation not only by alleging that but for the defendants' misleading representations or omissions the plaintiff would not have bought or sold the security at issue, but also by alleging that, but for the defendants' deception of the plaintiffs, the plaintiffs might have pursued a state law remedy that was available to prevent the sale of their stock to the defendants at a price significantly below its value. *Madison Consultants v. Fed. Deposit Ins. Corp.*, 710 F.2d 57, 63-64 (2d Cir. 1983); *see also Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 474 n.14 (1977).

Liana Ltd. and Rimon argue that, despite the fact that they did not have sufficient votes to block the merger under Nevada law, the absence of disclosure with respect to the Financing Transactions leading up to the merger prevented them bringing a state law action that would have protected at least some of the value of their interest in the corporation. Specifically, they point to two state law actions that were foreclosed as a result of the alleged failure to disclose: (1) a derivative action for breach of fiduciary duty, and (2) an action for an appraisal.

The latter argument can be addressed on straight-forward loss causation grounds. An appraisal action values the shares of the dissenting stockholders at the time immediately prior to the merger. Nev. Rev. Stat. § 92A.320(1); *Am. Ethanol, Inc. v. Cordillera Fund, L.P.*, 252 P.3d 663, 666 (Nev. 2011). Here, however, Plaintiffs-Appellants do not contend that the valuation used at the time of the merger was inaccurate, but that the Financing Transactions so diluted their stake that it rendered the shares they did hold nearly valueless by the time the Short-Form Merger was executed. Appraisal, therefore, would not have offered them hope of recovery.

Plaintiffs-Appellants' theory with respect to the former argument is that, had the conflicts inherent in the Financing Transactions been disclosed, they could have immediately maintained a derivative action for breach of fiduciary duty on behalf of Pure Biofuels. By lulling Plaintiffs-Appellants into complacency, these alleged omissions ultimately permitted Plainfield, FDS and Trimarine to obtain the control necessary to execute the Short-Form Merger. Thus, Plaintiffs-Appellants argue, but for these omissions, they might have taken preemptive action, preserving the pre-dilution value of their Pure Biofuels holdings.

The problem for Plaintiffs-Appellants' argument is that the connections laid out in their motion to amend are too attenuated to establish the "essential link" between the alleged omissions by defendants at the time of the Financing Transactions and PBC Acquisition's

7

capacity to execute the Short-Form Merger years later that proof of transaction causation requires. *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1089 (1991); *Grace v. Rosenstock*, 228 F.3d 40, 47-49 (2d Cir. 2000). Even assuming the materiality of the alleged omissions, we have never relieved a securities-law plaintiff of the burden of proving the but-for relationship between the alleged misrepresentations and the securities transaction that our § 10(b) and Rule 10b-5 jurisprudence requires. *See Minzer v. Keegan*, 218 F.3d 144, 149-50 & n.2 (2d Cir. 2000).

Assuming, for purposes of argument, that the allegations about the conflicts underlying the Financing Transactions are true, the causal link in this case is broken by (1) the necessity of tapping some source of financing and (2) the fact of Plainfield's controlling stake in Pure Biofuels. Plaintiffs-Appellants do not contest that Pure Biofuels was in dire need of financing. In fact, Plaintiffs-Appellants' original complaint turned on the allegation that Pure Biofuels had failed to disclose just how dire its financial situation was at the time its securities were originally sold to Liana Ltd. and Rimon. But if Pure Biofuels was in the financial straits that Plaintiffs-Appellants allow, it is highly likely that it would have been forced to obtain financing on unfavorable terms – perhaps including the issuance of equity warrants such as those that diluted the interests of minority stockholders like Liana Ltd. and Rimon – in any case. Moreover, a significant component of the dilution occurred because of Plainfield's insistence that it be awarded equity warrants in exchange for its approval of the proposed Financing Transactions. This is not evidence of conspiracy, but was, instead, a rational demand by Plainfield that enabled it to protect the value of its own interest. As the controlling shareholder, Plainfield likely would have demanded the same in exchange for agreeing to any form of financing transaction granting warrants to the lender. Moreover, as a component of

8

demonstrating transaction causation, Plaintiffs-Appellants would have to show that, by the mechanism of the derivative suit, they "would have succeeded in preventing the loss [they] in fact suffered." *Madison Consultants*, 710 F.2d at 65. Taking into account the clear necessity for some sort of financing and the limited options available even had the board explored more broadly, it is far from clear that they would be able to do so. As a result, the "essential link" between the alleged omissions in connection with the Financing Transactions and the ultimate ability of Pure Biofuels' controlling shareholders to execute the Short-Form Merger that our precedent requires is not plausible on the facts alleged in this case.

Contrary to Plaintiffs-Appellants' suggestion, neither *Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2d Cir. 1967), nor *Goldberg v. Meridor*, 567 F.2d 209 (2d Cir. 1977), suggest otherwise. In each of those cases, the plaintiffs' allegations focused on misrepresentations or omissions directly connected with the purchase or sale of securities that the plaintiffs had put at issue. The complaint in *Goldberg* turned on alleged omissions in the defendants' disclosures with respect to a transaction between a controlling parent corporation and its subsidiary that was detrimental to the interests of the subsidiary's minority shareholders. 567 F.2d at 211-12; *see also id.* at 218 (describing the Rule 10b-5 action as arising "when a controlling corporation causes a partly owned subsidiary to sell its securities to the parent in a fraudulent transaction and . . . makes a misleading disclosure [in connection with that transaction]"). And *Vine* "alleged a single two-phase scheme to eliminate Class A shareholders." *Grace*, 228 F.3d at 49. Particularly in light of the "serious obstacle" that the absence of clear congressional intent to provide for a private right of action to enforce the securities laws places in front of a plaintiff seeking "expansion of cognizable [] causation" under the securities laws, *Va. Bankshares*, 501 U.S. at 1104, the allegations adduced in Plaintiffs-Appellants' complaint and motion to amend

9

do not articulate transaction causation to the degree required by our precedent and leave to amend was therefore properly denied as futile.

## 2. "Arising Under" Jurisdiction: State Law Contract Claim

Plaintiffs-Appellants argue that the district court erred in holding that their state law contract claim did not "aris[e] under" federal law for federal question jurisdiction to attach. *See* 28 U.S.C. § 1331. The 10b-5 Representation in Plaintiffs-Appellants' subscription agreement provided as follows:

> The Company has filed all reports, schedules, forms, statements and other documents required to be filed by the Company under the Securities Act and the Exchange Act [the "SEC Reports"] . . . . As of their respective dates, the SEC Reports complied in all material respects with the requirements of the Securities Act and the Exchange Act, as applicable, and none of the SEC Reports, when filed, contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

App'x 50.

Plaintiffs-Appellants argue that this representation triggers federal question jurisdiction because the question whether defendants breached the contract turns entirely on whether Pure Biofuels' "SEC Reports complied in all material respects with the requirements of the Securities Act and the Exchange Act."[2]

The Supreme Court has set out a four-part test for determining whether a state law cause of action will trigger federal question jurisdiction. Federal jurisdiction lies if the "federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in

---

[2] Plaintiffs-Appellants presumably seek to take advantage of New York's six year statute of limitations for contract claims. N.Y. C.P.L.R. 213(2).

10

federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013). We assume that the first two prongs of this test are met here; it is on the last two the Plaintiffs-Appellants' argument founders.

The "substantiality inquiry . . . looks [] to the importance of the issue to the federal system as a whole." *Id.* at 1066. For instance, in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), the Court held that the question presented in that case, which went to whether the IRS had satisfied statutory notice requirements in seizing and selling a tax delinquent's property, grounded federal question jurisdiction because of the broad significance of the question whether the notice the IRS was providing was adequate to enable the transfer of title. *Id.* at 315. The resolution of that question, the Court later observed, "would be controlling in numerous other cases." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006). However, because Plaintiffs-Appellants have not pointed us to "something more, demonstrating that the question is significant to the federal system as a whole," and the resolution of the issue would be relevant only to these parties, *see Gunn*, 133 S. Ct. at 1068, the issue in this case is not substantial enough to trigger federal jurisdiction over Plaintiffs-Appellants' fundamentally state law cause of action.

Respect for the state-federal balance also inclines against attachment of federal question jurisdiction on the facts of this case. It is uncontested that Plaintiffs-Appellants' state law cause of action is structured as a run-of-the-mill state law contract claim, governed by state law standards and analyzed using the familiar elements applied in a New York breach of contract action. The fact that the state court's analysis of breach will necessarily turn on the requirements of federal securities law does not change the underlying nature of Plaintiffs-Appellants' claims, which are determined as a matter of course by the state courts

11

every day – and whose resolution of any embedded federal issue, if decisive to the case, would ultimately be subject to possible Supreme Court review. The Supreme Court has consistently made clear "the need to give due regard to the rightful independence of state governments – and more particularly, to the power of the States to provide for the determination of controversies in their courts," and, though the underlying federal law issue is generally subject to exclusive federal jurisdiction, our "concern for state court prerogatives [does not] disappear . . . in the face of a statute granting exclusive federal jurisdiction." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1573 (2016). Thus, because there is no clear indication either that the federal question at issue in this case is substantial, or that it is particularly important to maintaining the federal-state balance that we claim jurisdiction over Plaintiffs-Appellants' contract claim, federal question jurisdiction does not lie.

### 3. Letter Briefing and Dismissal with Prejudice

We deal briefly with two other arguments raised by the Plaintiffs-Appellants. Plaintiffs-Appellants argue that the district court erred in evaluating whether leave to amend would be futile by letter briefing rather than formal motion practice. However, the Local Rules used in the Southern District of New York specifically contemplate letter-based motion practice, *see* Local Rule 7.1, and determining the appropriate length for either letters or more formal motions is certainly generally committed to the sound discretion of the district court. Other than its demand for brevity, which does not appear to have been prejudicial to Plaintiffs-Appellants' ability to describe its claims, as each of the claims articulated on appeal is encapsulated in the letters to the district court, Plaintiffs-Appellants do not specifically identify any feature of the district court's procedure that they view as problematic. Without more, therefore, we have no grounds for finding the procedure utilized by the district court improper.

*Cf. Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (finding the district court's procedure inadequate because it was prejudicial and presented the plaintiffs "with a Hobson's choice").

The district court could not properly dismiss Plaintiffs-Appellants' state law claims with prejudice without exercising supplemental jurisdiction. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 121-24 (2d Cir. 2006). Thus, once the district court properly declined to exercise such jurisdiction over plaintiffs-appellants' state law claims, the appropriate procedure would have been to dismiss those claims without prejudice. The district court having failed to do so, we hereby order that the judgment of the district court be modified to reflect the dismissal of Plaintiffs-Appellants' state law claims without prejudice.

\* \* \*

We have considered Plaintiffs-Appellants' remaining arguments and find them to be without merit. Accordingly, we **MODIFY** the judgment of the district court to order Plaintiffs-Appellants' state law claims dismissed without prejudice, and, as so modified, **AFFIRM** the judgment.

                FOR THE COURT:
                Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit